Filed 7/22/15  Certified for Publication 8/12/15 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ANTHONY B., a Person Coming Under the Juvenile Court Law. | D067577 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES, | (San Diego County Super. Ct. No. J517-817B) |
| Plaintiff and Respondent, | |
| v. | |
| ANTHONY B. et al., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Donal B. Donnelly, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Anthony B.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant Anita T.

1

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Anthony B. (Father) appeals a juvenile court order terminating his parental rights to the minor, Anthony B. (Anthony), and choosing adoption as the appropriate permanent plan. (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless noted.) Anthony was born premature and needed to stay in the hospital. The San Diego County Health and Human Services Agency (Agency) filed a petition under section 300, subdivision (b) on Anthony's behalf, believing neither Anthony's mother nor father could safely care for him.[1] The Agency cited the mother's mental illness, the father's failure to protect, the lack of a suitable living condition, and the parents' previous separate failures to reunify with siblings due to domestic violence and substance abuse to justify the removal. Anthony was removed from Father and his mother and placed in a foster home. Reunification services were ordered for Father but bypassed for the mother. The Agency requested the court terminate Father's reunification services at the 18-month permanency review hearing because Father failed to maintain sobriety and did not have a safe and stable environment for Anthony to live in. The court terminated Father's parental rights at the section 366.26 hearing, finding Anthony adoptable, and that no exception to adoption exists.

Father alleges the court erred in finding the parent-child beneficial relationship exception (§ 366.26 subd. (c)(1)(B)(i)) inapplicable. He contends he meets both prongs

---

[1] The mother does not separately appeal but joins and supports the father's position.

2

required by the exception and seeks a reversal of the order terminating his parental rights. We disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. Background

In October 2012, Anthony was born premature with respiratory distress and feeding difficulty requiring an extended stay in the neonatal intensive care unit and specialized care. Shortly after Anthony's birth, the Agency filed a petition[2] on Anthony's behalf alleging his parents were unable to care for him at that time due to inadequate housing, mother's mental health conditions, and Father's unawareness of the risk mother's mental health conditions posed to Anthony. Mother had schizophrenia, bipolar disorder and anxiety. In addition, the parents' previous separate failures to reunify with siblings due to domestic violence, substance abuse and homelessness supported the removal.

In January 2013, the juvenile court declared jurisdiction over Anthony. The court removed him from parental custody, placed him in foster care, denied services to the mother, ordered reunification services for Father and set review hearings. The court ordered supervised visits for Father. The Agency reported Father was diligently participating in services by completing a parenting course, maintaining employment, attending substance abuse recovery meetings, and testing negative for drugs. He was visiting Anthony regularly. Visitation monitors reported Father demonstrated a parental role and responded appropriately toward Anthony.

---

[2] The Agency filed the petition under section 300, subdivision (b).

At the August 2013 six-month review hearing, the juvenile court ordered six more months of services and unsupervised visits for Father. Father remained in a relationship with Mother and continued to reside with her. It was a risk for Mother to be present during Father's unsupervised visits because of her severe mental health conditions and history of aggressive behavior. The Agency created structured unsupervised visits because Father needed some assistance with Anthony's medical conditions. Father started unsupervised visits in October 2013 and continued acting appropriately and loving toward Anthony.

In December 2013, Father was kicked out of his residential hotel "for no reason" and moved to interim housing inappropriate for Anthony to stay in overnight. He also lost his job. The Agency recognized that these events were out of Father's control and found that Father had been following through with everything that was required of him during this time. Due to this, the Agency requested a continuance of three months so Father could begin overnight visits. The juvenile court reviewed the Agency's findings and set an 18-month permanency review hearing for April 2014.

Father obtained a new job and appropriate housing. He continued to have appropriate supervised and unsupervised visits with Anthony. The court continued the April 2014 permanency review hearing to July 16, 2014, so Father could have time to begin a 60-day trial visit. Father's first overnight visit was May 2, 2014. However, Father was found intoxicated while having Anthony for an overnight visit on May 20, 2014. In response, the Agency filed a petition to return Father to supervised visits. Father was discharged from his housing after he was found intoxicated a second time. He

4

failed to show up for a drug test on July 7, 2014. Father continued acting appropriately and loving toward Anthony at supervised visits.

At the 18-month permanency review hearing, the Agency requested the court terminate services and set a section 366.26 for Anthony. By August 2014, Anthony's dependency case had lasted 22 months and Father was still struggling with sobriety, continuing a relationship with Mother, and unable to provide a safe and stable environment for Anthony to live.

At a supervised visit on August 13, 2014, Father answered his cell phone, ignoring the minor, and smelled of alcohol. Anthony cried and reached for the door. Father again smelled of alcohol on his August 20, 2014 visit. Anthony's caregiver reported the visits between Father and Anthony were traumatic for Anthony, who would consistently have night terrors after each visit. Father reported he was sleeping on the street with Mother and that she was unstable due to recent violent outbursts. Father missed another drug test on August 29, 2014. The court terminated Father's services on September 5, 2014, and set a section 366.26 hearing for December 22, 2014. Father had one visit with Anthony between September 16 and October 7, 2014. He was arrested on October 7, 2014, for inflicting corporal punishment on a spouse/cohabitant, possession of drug paraphernalia, battery, and false imprisonment with violence. Father did not arrange any visits or check on Anthony during his incarceration. Father was released on November 17, 2014, and failed to see Anthony during the three months remaining before the section 366.26 trial.

B.  Anthony's Section 366.26 Trial

The juvenile court held a section 366.26 trial on February 18, 2015.  The court received the Agency's reports and the social worker's curriculum vitae into evidence without objection.  The Agency presented evidence that Anthony was thriving under the care of prospective adoptive parents and that they provided him a stable, suitable, and loving home.  Neither parent presented any affirmative defenses.  Father's counsel asked the court to apply the beneficial parental exception to adoption.  However, the court found Anthony adoptable by clear and convincing evidence and that Father had failed to establish the existence of a parent-child bond sufficient to invoke the statutory exception to adoption.  The court acknowledged that although Father's visitation had "generally been of good nature," it had not been "substantial."  The court terminated parental rights and implemented a permanent plan of adoption for Anthony.

## DISCUSSION

On appeal, Father does not argue Anthony is not likely to be adopted.  Rather, he claims he carried his burden at trial of showing, by a preponderance of evidence, that it would be detrimental to terminate his parental rights because the beneficial parental relationship exception in section 366.26, subdivision (c)(1)(B)(i) applies.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553-554.)  On appeal, he claims there is no substantial evidence to support the court's contrary ruling.

# I

## *APPLICABLE STANDARDS*

At a section 366.26 permanency planning hearing, the juvenile court determines a permanent plan of care for a dependent child, which may include adoption. (*In re S.B.* (2008) 164 Cal.App.4th 289, 296; *In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) "If the dependent child is adoptable, there is strong preference for adoption over the alternative permanency plans." (*In re S.B., supra*, at p. 297; *In re Michael G.* (2012) 203 Cal.App.4th 580, 588.) In order to avoid termination of parental rights and adoption, a parent has the burden of proving, by a preponderance of the evidence, that one or more of the statutory exceptions to termination of parental rights set forth in section 366.26, subdivision (c)(1)(A) or (B) apply. (*In re J.C.* (2014) 226 Cal.App.4th 503, 529; *In re Scott B.* (2010) 188 Cal.App.4th 452, 469.) The court, "in *exceptional circumstances*," may "choose an option other than the norm, which remains adoption." (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) The parental benefit exception applies when there is a compelling reason that the termination of parental rights would be detrimental to the child. This exception can only be found when the parents have maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).)

We apply the substantial evidence standard of review to the factual issue of the existence of a beneficial parental relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination would be detrimental to the child. (*In re J.C.*, *supra*, 226 Cal.App.4th at pp. 530-531; *In re K.P.*

7

(2012) 203 Cal.App.4th 614, 621-622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

*VISITATION PRONG*

If the court determines a child is adoptable (as Anthony is), the parent bears the burden of showing that the termination of parental rights would be detrimental under one of the exceptions listed in section 366.26 subdivision (c)(1). (*In re S.B., supra*, 164 Cal.App.4th at p. 297.) Father asserts he meets the first prong of the parental benefit exception because he "maintained regular visitation and contact with the child" within the meaning of section 366.26 subdivision (c)(1)(B)(i). However, the court found Father's visits, while generally of good nature, had not been substantial. We determine whether there is substantial evidence to support the trial court's ruling by reviewing the evidence most favorably to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) If the court's ruling is supported by substantial evidence, the reviewing court must affirm the court's rejection of the exceptions to termination of parental rights under section 366.26, subdivision (c). (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

"Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption." (*In re C.F., supra,* 193 Cal.App.4th at p. 554.) The type of parent-child relationship sufficient to derail the statutory preference for adoption is one in which "regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H., supra,* 27

8

Cal.App.4th at p. 575.)  Such relationship "arises from day-to-day interaction, companionship and shared experiences."  (*Ibid*.)

While Father's visitation with Anthony was consistent and positive during a previous period of time, during the five months preceding the section 366.26 trial Father's visitation was, at best, sporadic.  This does not amount to the regular contact and visitation intended by the Legislature.  (§ 366.26, subd. (c)(1)(B)(i)*; In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)  Father was intoxicated while visiting Anthony once on an overnight visit and twice in August 2014 during supervised visits.  These visitations were not the type that would have developed a significant or positive emotional attachment between Father and Anthony.  Based on these facts, we conclude substantial evidence supports the court's determination that Father did not meet his burden of establishing the first prong of the parental benefit exception.

III

*SUBSTANTIAL BENEFIT PRONG*

The issue here is not whether there was a bond between Father and Anthony.  The question is whether that relationship remained so significant and compelling in Anthony's life that the benefit of preserving it outweighed the stability and benefits of adoption. The " 'benefit' " necessary to trigger this exception requires that " 'the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would

9

confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' " (*In re J.C.*, *supra*, 226 Cal.App.4th at pp. 528-529; *In re Autumn H., supra,* 27 Cal.App.4th 567, 575.)  As described in *Autumn H.*, the beneficial relationship must be examined on a case-by-case basis, taking into account the many variables that can affect the parent-child relationship.  (*Id.* at pp. 575-576; *In re J.C., supra*, at p. 532.)

Father contends the beneficial parental relationship exception should apply here. He argues the juvenile court erred or abused its discretion by choosing adoption as the permanent plan over guardianship or long term foster care.  However, this parental benefit exception only applies where the parent has demonstrated that the benefits to the child in continuing the parental relationship will outweigh the benefits of permanence through adoption.  This is not such an extraordinary case, such as where an older child has formed an enduring bond with a parent despite the parent's shortcomings, and where it would be harmful to the child to interfere with that enduring bond.  (See, e.g., *In re Scott B.* (2010) 188 Cal.App.4th 452, 471.)

Here, Father has not demonstrated any likelihood that he will be able to take custody of Anthony within any reasonable time or that alternative placements would be preferable.  The evidence shows whatever positive emotional relationship previously developing between Father and Anthony over the first 18 months of his life diminished after Father went nearly five months without visiting or contacting Anthony.  The court found Father's visitation was not the type that would have cemented a parent-child bond

10

as required by law. Evidence was presented that Anthony was benefitting from his placement with prospective adoptive parents, who provided him a stable, suitable, and loving home. The court concluded the potential benefits of adoption were not outweighed by any benefit from maintaining Father's presumed parent status. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 424 [balancing test applies].) Therefore, substantial evidence supports the court's finding that Father did not satisfy the second prong of the beneficial parent-child relationship exception. For these reasons, the juvenile court did not err or abuse its discretion in ruling the parental benefit exception to adoption was not applicable here. (§ 366.26, subd. (c)(1)(B)(i).)

## DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

11

Filed 8/12/15

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ANTHONY B., a Person Coming Under the Juvenile Court Law. | D067577 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES, | (San Diego County Super. Ct. No. J517-817B) |
| Plaintiff and Respondent, | |
| v. | |
| ANTHONY B. et al., | |
| Defendant and Appellant. | |

THE COURT:

The opinion filed July 22, 2015, is ordered certified for publication.

_____

HUFFMAN, Acting P. J.

Copies to:  All parties

1