Filed 5/17/16  In re Y.M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Y.M., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>          Petitioner and Respondent,<br><br>v.<br><br>J.M., et al.,<br><br>          Objectors and Appellants. | A146986<br><br>(San Francisco County<br>Super. Ct. No. JD133043A) |

J.M. (father) and M.M. (mother) appeal from the juvenile court's order terminating their parental rights over their twelve-year-old son, Y.M.[1]  They contend that their parental rights were wrongly terminated because the termination will substantially interfere with Y.M.'s relationships with his siblings, and Y.M.'s interest in continuing those relationships outweighs the benefits he will receive from adoption.[2]  We disagree and therefore affirm the judgment.

---

[1] Instead of filing her own opening brief, mother joined father's opening brief.

[2] See Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(v).  Further undesignated statutory references are to the Welfare and Institutions Code.

1

On January 29, 2015, at the conclusion of a contested 12-month status-review hearing, the juvenile court terminated reunification services to parents and set the matter for a section 366.26 selection-and-implementation hearing.[3]  In advance of that hearing, San Francisco Human Services Agency (Agency) filed a report recommending a permanent plan of legal guardianship for Y.M. by his caregivers, Rod R. and D.R.  The report favorably described the care the R.'s were providing Y.M.  It reported that D.R is a special education teacher who works daily with Y.M. on homework, socialization, and self-esteem.  It noted that Y.M. is in school taking classes in English, Math, Science, Social Studies, and Physical Education, and he is receiving grades of A's and B's.  According to the report, Y.M. adjusted well in school, joined the school choir, and is making many friends.  The report stated that Y.M. does not want to see his mother, and his therapist attributed better behavior by Y.M. because he knows he does not have to visit his mother.  Y.M.'s therapeutic visits with father and the younger siblings occurred through January 2015, but they were discontinued after father suffered a stroke.  The Agency attempted to resume the visitation, but the family failed to answer the door or return phone calls.  The report confirmed that Y.M. has been with the R.s for over a year.  The R.s are financially stable, have two daughters who are 23 and 14 years old living at home, and have expressed their love for Y.M. and consider him to be part of their family.  The report indicated that the R.s want guardianship of Y.M. to provide him with a stable, permanent home and to give him the opportunity to have a bright future.

In an addendum report filed in July 2015, the Agency changed the recommended permanent plan from legal guardianship to adoption.  In doing so, the report stated that the R.s have "remained steadfast" in their decision to provide permanency for Y.M. and

---

[3] Mother filed a petition for an extraordinary writ following termination of reunification services, which we denied on the merits.  (*M.M. v. Superior Court* (Apr. 10, 2015, A144263) [nonpub. opn.].)  We incorporate by reference the "Background" section of our opinion in (*M.M. v. Superior Court*, *supra*, A144263), which includes events up to and including the conclusion of the 12-month review hearing, and relate here the events following that hearing.

now want to adopt him along with another boy currently in their care. The Agency opined that adoption is in Y.M.'s best interest, and it reiterated that Y.M. does not want contact with his mother and has had no contact with his father for months.

A contested section 366.26 hearing was held on December 7, 2015. Agency social worker Minyon McGriff testified that she was assigned to the case in March 2015. That month, Y.M. resumed visitation with father and his younger siblings but did not start visitation with mother due to a restraining order. The visits Y.M. has with father and his siblings are supervised at Bayview YMCA and take place one day every other week from 3:30 to 5:30 p.m. McGriff testified that during the visits, Y.M. "interact[s] a lot" with his siblings but has limited engagement with father due to father's inability to communicate effectively following his stroke. McGriff remarked that Y.M. has a great relationship with the R.s, and she testified that the R.s understand the distinction between guardianship and adoption and are willing to become Y.M.'s adoptive parents. McGriff stated she was confident Y.M. "will have a forever home in this placement."

On cross-examination, McGriff testified that the R.s support Y.M.'s continued contact with his siblings and are willing to develop a reasonable visitation plan under the auspices of the Children's Consortium. McGriff stated that the interaction between Y.M. and his father during supervised visits was "very limited" due to a combination of father's physical difficulties and the two simply not knowing how to communicate. During visits, Y.M. and his younger siblings talk, play games, watch videos, and eat together. According to McGriff, they talk a lot about what happens in school and "have certainly said that they love each other." Y.M. has reported that he likes to see his siblings and "know that they are okay," but he is "not interested in returning home."

Y.M. also testified at the hearing. He described the R.s' two daughters as his "foster sisters," and the other boy who lives with the R.s as his "foster brother." He likes living with the R.s and is happy with them because they take good care of him. His parents did not take good care of him and "wouldn't even care if I am sick or anything. They were just like giving you whippings and something like that." Y.M. stated he would like the R.s to adopt him to "have a better life and somewhere to live." Y.M.

3

acknowledged that if he were to be adopted, his birth parents would no longer be his legal parents and he felt "great" about that. He stated he feels safe with the Rs, they comfort him when he is ill or upset, and "now [] I live with the [R.s] I feel like family."

Y.M. stated he currently visits with his three younger siblings every other Tuesday. During these visits, Y.M. and his siblings "talk sometimes," play video games and watch TV. Asked whether he would like to continue to see his siblings, Y.M. replied, "I don't know." Over the summer, Y.M. did not see his siblings as frequently, and he was "okay" with that and did not miss them a lot. On cross-examination, Y.M. acknowledged that he was not "that upset about visiting [his] siblings less," and stated, "It doesn't matter to me" when asked if he would "be okay just not seeing them at all."

## DISCUSSION

### A. The Applicable Legal Standards

"At a section 366.26 hearing the court is charged with determining a permanent plan of care for the child." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) Depending on the evidence presented at the hearing, the court is required to order one of several alternatives, including adoption, relative or non-relative legal guardianship, or long-term foster care. (§ 366.26, subd. (b)(1)-(7).) "Adoption, where possible, is the permanent plan preferred by the Legislature. [Citation.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*); *In re D.M.* (2012) 205 Cal.App.4th 283, 289 (*D.M.*).) " ' "Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered." ' [Citation.]" (*D.M.*, at p. 290.)

Adoption necessarily involves terminating the biological parents' parental rights. (See *Autumn H.*, *supra*, 27 Cal.App.4th at p. 574; *D.M.*, *supra*, 205 Cal.App.4th at p. 290.) After the court determines by clear and convincing evidence that a child is likely to be adopted, the burden shifts to the party opposing adoption to show that terminating parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)(B). (See *In re C.F.* (2011) 193 Cal.App.4th 549, 553.) One of those exceptions is the "sibling-relationship" exception, codified in section

4

366.26, subdivision (c)(1)(B)(v). This provision establishes an exception to terminating parental rights when the termination would result in "substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, [1] whether the child was raised with a sibling in the same home, [2] whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and [3] whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v); see *In re Valerie A.* (2007) 152 Cal.App.4th 987, 998.)

In evaluating the applicability of the sibling-relationship exception, the juvenile court "is directed first to determine whether terminating parental rights would substantially interfere with the sibling relationship. . . ." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951–952; see *In re Daisy D.* (2006) 144 Cal.App.4th 287, 293 ["The exception . . . applies only when adoption would result in 'substantial interference with a child's sibling relationship.' "].) "*If* the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L.Y.L.*, at p. 952 [italics added].) "The sibling relationship exception 'permits the trial court to consider possible detriment to the child being considered for adoption, but not a sibling of that child.' [Citation.]" (*D.M.*, *supra*, 205 Cal.App.4th at p. 291.)

We review a trial court's determination that terminating parental rights would substantially interfere with a sibling relationship under the substantial-evidence standard. But we review the court's weighing of competing interests under the abuse-of-discretion standard. (See *In re Anthony B.* (2015) 239 Cal.App.4th 389, 395; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314–1315.)

### B. The Sibling-relationship Exception Did Not Prevent the Juvenile Court from Terminating Parental Rights.

Father and mother contend that their parental rights should not have been terminated because of the sibling-relationship exception. We disagree because we conclude that substantial evidence was presented that the termination of parental rights will not substantially interfere with Y.M.'s relationships with his siblings "taking into consideration the nature and extent of th[ose]relationship[s]." (§ 366.26, subd. (c)(1)(B)(v).)

Y.M. is years older than his siblings, and he has spent little time with them since he was removed from the home in October 2013. When he was removed from the home, Y.M. was ten years old, his sister R. had just turned six, his younger brother L. was five, and his other brother S. was two. Since being removed, Y.M. has not lived with his siblings in the same family home. It was not until the spring of 2014 that Y.M. began short, two-hour supervised visits with his siblings, and since then the visits have been intermittent and were reduced to once every two weeks.

While Y.M. clearly cares for his siblings, substantial evidence was presented that Y.M. does not have "existing close and strong bonds" with his siblings within the meaning of the sibling-relationship exception. (§ 366.26, subd. (c)(1)(B)(v).) To be sure, Y.M. reported to the social worker that he likes to see his siblings and to "know that they are okay." And the social worker testified that during visits Y.M. and his siblings "are always happy to see each other" and "have certainly said that they love each other." But while this evidence shows that Y.M. has healthy and happy relationships with his siblings when he is with them, it does not demonstrate that those relationships are "sufficiently significant to cause detriment" if they were to be ended. (*D.M.,* 205 Cal.App.4th at p. 290-291 [" 'Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship.' [Citation.]"].)

The strongest evidence presented about the "nature and extent" of Y.M.'s relationships with his siblings was Y.M.'s own testimony. He testified that he was "okay" with the fact that he did not see them much over the summer, did not miss them much when he did not see them, and was not upset at seeing less of them. And he did not react strongly when asked if he would mind not seeing them again. This testimony constitutes substantial evidence supporting a conclusion that terminating parental rights would not substantially interfere with Y.M.'s sibling relationships. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at pp. 951–952.) Accordingly, the sibling-relationship exception to termination of parental rights is inapplicable in this case. (See *In re Daisy D.*, *supra*, 144 Cal.App.4th at p. 293 ["The exception . . . applies only when adoption would result in 'substantial interference with a child's sibling relationship.' "]).

Furthermore, even if we were to disregard this substantial evidence and conclude that terminating the parents' rights would substantially interfere with Y.M.'s sibling relationships, we would still affirm the trial court's order. This is because nothing in the record supports a conclusion that the court abused its discretion by implicitly finding that the benefits to Y.M. from "the permanency of adoption" by the R.s outweigh Y.M.'s interests in continuing his sibling relationships. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 952.)

The juvenile court did not improperly select adoption as the permanent plan for Y.M.

## DISPOSITION

The judgment is affirmed.

 

                              _____

                              Humes, P.J.

We concur:

_____

Margulies, J.

_____

Banke, J.

8