Filed 10/7/20  In re T.E. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T.E., a Person Coming Under the Juvenile Court Law. | |
| | D077501 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J515545B) |
| v. | |
| M.P., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

M.P. (Father) appeals an order terminating his parental rights in the juvenile dependency case involving his minor son, T.E., following a selection and implementation hearing under Welfare and Institutions Code section 366.26.[1]  Father contends the trial court erred in finding T.E. to be specifically adoptable.  He argues that because T.E., who was 11 years old at the time of the hearing, was equivocal about his interest in adoption, his potential opposition to adoption was sufficient to undermine the trial court's finding that he was adoptable.  He suggests it would have been prudent to delay the hearing to allow T.E. to turn 12 years old, at which point his consent to adoption would be necessary.

We disagree.  Affording the trial court's findings the usual deference, we conclude the juvenile court did not err in making its ruling.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL SUMMARY

In July 2017, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of eight-year-old T.E.  The Agency alleged that Father and L.E. (Mother) were failing to provide T.E. with adequate nutrition and medical treatment.[2]

As discussed in the detention report, T.E. was diagnosed at birth with cystic fibrosis, which caused him to need, inter alia, regular medical care and a special diet.  T.E. was placed in foster care when he was six years old as

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Mother has not appealed from the juvenile court's order.  Accordingly, our discussion of the proceeding as it relates to her is limited.

part of an earlier dependency proceeding which terminated with T.E. being reunified with his parents.

Immediately before the current proceeding, parents caused T.E. to miss medical appointments, admitted they had run out of some of T.E.'s medications, and were not providing him with the necessary supplemental nutrition. T.E. also required the assistance of a chest compression vest, but it appeared the parents were not ensuring he used it as needed.

The juvenile court found that the Agency had made an adequate showing that T.E. was a person described by section 300, subdivision (b), and ordered him detained in out-of-home care.

In the Agency's jurisdiction/disposition report, the social worker opined that it was not safe for T.E. to remain in the care of his parents. Parents had misrepresented their care of T.E. to the Agency, leading T.E. to continue to lose weight and live without his required medications. In an addendum report, the social worker noted that T.E. had been placed at Polinsky Children's Center. At the time of the Agency's addendum report, T.E. expressed to the social worker that he did not want to be placed in a foster home. However, by early September 2017, he was placed in a foster home and was excited to be with his foster mother. Unfortunately, he was forced to return to Polinsky Children's Center shortly thereafter because the foster mother could not care for T.E. and there was no alternative caretaker.

At T.E.'s jurisdiction hearing in October 2017, the court sustained the allegations of the petition under section 300, subdivision (b), continued T.E.'s placement in out-of-home care, and ordered reunification services for both parents.

Before the six-month review hearing, the Agency continued to seek a foster placement for T.E. but was struggling to find one given his medical

issues and aggressive behaviors. T.E. expressed that he did not want to be placed in a foster home. At the six-month review hearing in May 2018, T.E. was still at Polinsky Children's Center and the trial court ordered that reunification services continue. At the 12-month review hearing in October 2018, T.E. had still not been placed in a foster home. Based on the parents' failure to make significant progress on their case plans and inconsistent visitation with T.E., the juvenile court terminated reunification services and granted the Agency's request to schedule a selection and implementation hearing under section 366.26.

In January 2019, T.E. was placed in a foster home in Los Angeles. At the section 366.26 hearing held in April 2019, the juvenile court found T.E. was *not* adoptable and selected a permanent plan of foster care. T.E. continued his placement in the Los Angeles foster home, but his foster mother expressed she was not interested in adoption at that time. T.E. expressed that he would be in favor of staying in his current placement on a long-term basis.

Several months later, in August 2019, T.E.'s attorney filed a section 388 petition asking the trial court to set a new section 366.26 hearing to modify T.E.'s permanent plan because the foster mother had changed her mind and was now interested in adoption. The trial court granted the petition and in a report filed in December 2019, the Agency recommended that the court terminate parental rights and select a permanent plan of adoption. The Agency noted that T.E., who was now 11 years old, was not generally adoptable given the complexity of medical care required to address his cystic fibrosis, but he was specifically adoptable. His foster mother was a nurse with the necessary skill and background to care for T.E. T.E. expressed concerns with adoption given its effect on his parents, but told the

4

social worker that "he does want to be adopted and has stated prior that he would want to stay with the caregiver long term, regardless of the designated permanent plan."

In an addendum report filed in March 2020, the Agency noted that T.E. "has become increasingly unwilling and hesitant to discuss the permanent plan of adoption." T.E. told the social worker that "he feels the issue has already been decided and that his voice does not matter."

At the section 366.26 hearing, neither parent presented any evidence or asked to cross-examine the social worker. Father offered no argument and his counsel indicated that Father informed counsel that "he understands that his son wants to stay [in his current placement]." T.E.'s counsel reported that T.E. had been undecided about which permanent plan he would prefer and "as we speak here, he says that he does not know what plan he would like to have." T.E.'s counsel noted that in her role as guardian ad litem, she believed that adoption was the best permanent plan for T.E.

The court found that T.E. was not generally adoptable but was specifically adoptable and that none of the exceptions to the termination of parental rights applied in this case. Accordingly, the court ordered that parental rights be terminated and adopted a permanent plan of adoption.

Father timely appealed the order.

DISCUSSION

I.

On appeal, Father challenges the trial court's finding that T.E. was specifically adoptable, asserting that the finding was not supported by substantial evidence. We disagree.

" 'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.' [Citation.] 'A section

5

366.26 hearing . . . is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] 'The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 52-53 (*Celine R.*).)

"Whenever the court finds 'that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.' [Citation.] The circumstance that the court has terminated reunification services provides 'a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more' of specified circumstances. [Citation.] The Legislature has thus determined that, where possible, adoption is the first choice. 'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' " (*Celine R.*, *supra*, 31 Cal.4th at p. 53.) "[T]o avoid termination of parental rights and adoption, a parent has the burden of proving, by a preponderance of the evidence, that one or more of the statutory exceptions to termination of parental rights set forth in section 366.26, subdivision (c)(1)(A) or (B) apply." (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.)

"When reviewing a court's finding a minor is adoptable, we apply the substantial evidence test. [Citations.] If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we must

6

uphold those findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. [Citations.] Rather, our task is to determine whether there is substantial evidence from which a reasonable trier of fact could find, by clear and convincing evidence, that the minor is adoptable. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*In re R.C.* (2008) 169 Cal.App.4th 486, 491 (*R.C.*).)

Here, the juvenile court found T.E. was not generally adoptable, but rather specifically adoptable because his current caregiver wanted to adopt T.E. "When a child is deemed adoptable only because a particular caretaker is willing to adopt, the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child." (*In re Helen W.* (2007) 150 Cal.App.4th 71; citing *In re Carl R.* (2005) 128 Cal.App.4th 1051, 1062.)

Here, Father admits that there is no legal impediment to the prospective parent's adoption and that she is capable of meeting the needs of T.E. He instead relies on T.E.'s stated ambivalence toward adoption as a potential barrier. In his opening brief, Father asserts that T.E. will soon turn 12 years old, at which point he must consent to adoption.[3] (Fam. Code, § 8602.) At a section 366.26 hearing, one exception to the general rule favoring adoption may exist when a "child 12 years of age or older objects to termination of parental rights." (§ 366.26, subd. (c)(1)(B)(ii).) In his reply brief, Father acknowledges this exception does not apply here because T.E.

---

[3] T.E. was 11 years old when the trial court entered its order and when Father filed his opening brief, but has since turned 12 years old.

was *not* 12 years old at the time of the section 366.26 hearing and did *not* object to the termination of parental rights. Nevertheless, he contends the juvenile court should have done more to determine whether T.E. would consent to adoption.

Applying the proper standard of review, we conclude the trial court's finding is supported by substantial evidence. We disagree with Father that the record establishes T.E. was not in favor of adoption. At most, the record suggests that T.E. expressed uncertainty about his preferences in regard to a permanent plan. To view T.E.'s uncertainty as evidence that he may ultimately decide he does not want to be adopted would be to rely on mere speculation regarding what may possibly happen in the future. Under our deferential standard of review, "[w]e cannot interfere with the juvenile court's ruling based on speculation about what 'may' happen." (*In re Jose C.* (2010) 188 Cal.App.4th 147, 159.) Viewed in the light most favorable to the trial court's ruling, the record discloses that just months before the section 366.26 hearing, T.E. stated that he wanted to remain in the care of his current foster mother and expressed a desire to be adopted. Faced with T.E.'s unwillingness to provide an opinion at the time of the hearing, and in the absence of any evidence in the record demonstrating an adverse change in circumstances regarding T.E.'s current placement, the trial court could reasonably determine that T.E. was open to being adopted by his current foster mother. The evidence is sufficient to support such a conclusion.

To the extent that Father is suggesting the juvenile court erred in not continuing the section 366.26 hearing to wait until T.E. was 12 years old, he forfeited that claim by not objecting at the hearing. (*In re A.S.* (2018) 28 Cal.App.5th 131, 151.) Had he raised this issue in the juvenile court, that court could have considered continuing the hearing, but he may not raise this

8

issue—which would require a balancing of interests—for the first time on appeal. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.) Moreover, he offers no authority suggesting that a trial court abuses its discretion by holding a section 366.26 hearing and selecting a permanent plan of adoption regarding a child who is 11 years old. Father's suggestion for delaying hearings based on mere speculation is inimical to the legislative preference and public policy generally supporting expediency in placing a child in a suitable placement.

Finding no error under the proper scope of appellate review, there is no basis for reversal.

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


GUERRERO, J.

9