Filed 5/7/21  In re M.G. CA4/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>R.G.,<br><br>    Defendant and Appellant. | G059701<br><br>(Super. Ct. No. 19DP1306)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Jeremy D. Dolnick, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

Defendant R.G. (mother) appeals from an order terminating her parental rights over her daughter M.G. Mother contends the court erred by refusing to apply Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i) (the parental bond exception to adoption) in her favor. We affirm.

**FACTS**

M.G., born in May of 2015, is the daughter of mother. Mother was arrested in October of 2019 on charges related to methamphetamine use. Mother has four older children who were previously removed from her custody due to her substance abuse history. After mother's arrest, M.G.'s maternal uncle gained access to mother's apartment and found various methamphetamine pipes throughout the home, in places easily accessible to M.G. While mother was incarcerated, M.G. was temporarily placed with her maternal aunt and uncle.

When interviewed by social services workers after her arrest, mother admitted long term methamphetamine use. Mother claimed she stopped using methamphetamine approximately three years before her arrest, but had smoked methamphetamine on the day of her arrest at the urging of a neighbor. When asked about the methamphetamine pipes in her apartment, mother claimed she was cleaning the apartment and discovered the pipes left behind by her ex-boyfriend, who she claimed she kicked out because of his methamphetamine use. In later interviews, M.G. told social workers she saw mother's boyfriend hit mother. In another later interview, mother told a social worker the methamphetamine pipes were in her room put away in a bag, and claimed her brother (maternal uncle) "set [her] up."

Orange County Social Services Agency (the Agency) filed a juvenile dependency petition, seeking M.G.'s removal from mother's care. At the jurisdictional hearing, mother pled nolo contendere to the allegations of the petition for purposes of jurisdiction. After the hearing, mother expressed reluctance to drug test via a patch, stating she feared false positives. The maternal uncle (M.G.'s caregiver) reported to the

2

Agency that M.G. was significantly behind on vaccinations and that mother had not been visiting consistently or for the full duration of her permitted visits. Mother tested positive for methamphetamine, but claimed it was caused by having sex with a new boyfriend, who was a methamphetamine user.

At the dispositional hearing, the court declared M.G. a dependent child of the court and took custody from mother. At approximately the same time, M.G. left the maternal uncle's care and entered foster care. With M.G. in foster care, mother's visitation improved. M.G. told a social worker she wanted to live with her new caregivers and said "mom can visit."

Mother tested positive for methamphetamine 14 consecutive times from November 2019 through March 2020 using the drug patch, until she tested negative on one occasion in late March 2020. However, during much of the same period, mother was tested for substances through her residential treatment program, and consistently tested negative. From late March through April 2020, mother tested negative. After the COVID-19 pandemic began, mother's visitation was converted to video chats. In person visitation was resumed in June 2020, and was productive. Mother again tested positive for methamphetamine on May 19, 2020, after completing treatment.

In July, M.G. told a social worker she wanted to live with her current caregiver, and not her mother, but would like her mother to visit. Mother tested negative in June and July. In August, mother left her residential treatment program, and her telephone calls with M.G. shortened in duration from 45 minutes to 15 minutes or less.

Before the permanency planning hearing, mother filed a motion for a change in the court's order under Welfare and Institutions Code section 388, seeking a return of M.G. to her care. Mother argued she had completed parenting classes, had completed a treatment program, and was self-sufficient, with a full-time job. Mother also contended her positive visits with M.G. showed it was in M.G.'s best interest to be placed with mother.

3

At the hearing, the Agency argued mother had been struggling with methamphetamine addiction for 20 years, and continued to struggle, as evidenced by a positive test for methamphetamine after completion of her treatment program. The Agency also argued mother had failed to demonstrate her present sobriety, and had failed to proceed beyond sporadic supervised visitation with M.G. The Agency cited M.G.'s expressed desire to live with her current caregivers, and argued mother's motion, while timely, was disfavored as it was brought on the eve of the hearing on termination of her parental rights. M.G.'s attorney supported the Agency's position.

In rebuttal, mother argued she had cleared the low bar of making a prima facie showing of changed circumstances, triggering the requirement of a hearing. The court found mother had not made the requisite prima facie showing and denied the motion, proceeding to trial on termination of parental rights.

At trial, mother testified she took care of M.G. for the first four years of her life. Mother admitted she placed M.G. at risk by taking drugs on the day she was arrested, but denied putting M.G. at risk on any other occasion. Mother testified M.G. had thrived under her care, called her "Mom," and had a strong mother-daughter relationship with her.

Mother testified she placed M.G. in Head Start and ensured proper hygiene. Mother described her visits with M.G., and their mutual affection. Mother denied lapses in her calls to M.G. When asked about the methamphetamine pipes found in her apartment, mother denied that the photos were taken in her residence.

At the conclusion of testimony, the Agency argued M.G. was adoptable and the parental bond exception did not apply. Mother argued the parental bond exception applied. Mother contended her visitation and contact were regular and consistent in light of the COVID-19 pandemic. On the second prong of the exception, mother argued her relationship was sufficiently strong with M.G. that it would be harmful to sever it by terminating her parental rights, pointing to M.G.'s displays of affection toward mother.

4

In the alternative to return to mother's care, mother sought a legal guardianship for M.G., such that mother could continue visitation.

M.G.'s attorney argued the court was required to provide M.G. with the most permanent plan available, and contended adoption was more permanent than legal guardianship. M.G.'s attorney referred again to mother's problems with methamphetamine, and failure to resolve those problems. M.G.'s attorney requested termination of parental rights and adoption. The Agency joined M.G.'s attorney. The court took the matter under submission.

The court found by clear and convincing evidence M.G. was likely to be adopted. On the parental bond exception, the court found mother had not maintained regular and consistent contact with M.G. The court also found mother had not demonstrated in her visitation that she was putting M.G.'s interests before her own. The court found it was not in M.G.'s best interest to order a legal guardianship instead of adoption, citing mother's denial of the facts surrounding her arrest and continued methamphetamine use.

Accordingly, the court terminated mother's parental rights and set a permanent plan of adoption. Mother appealed.

## DISCUSSION

On appeal, mother contends the court erred by finding the parental bond relationship exception to adoption did not apply.

Welfare and Institutions Code section 366.26, subdivision (c)(1) controls the court's determination at the permanency planning hearing: "If the court determines, . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. . . ." (*Ibid*.) Subdivision (c)(1) also creates certain exceptions to the rule in favor of parental termination, including the one relevant to this case: "Under these circumstances, the court shall terminate parental rights unless either of the following

5

applies:  [¶] . . . [¶] (B)  The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances:  [¶] (i)  The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

At the permanency planning hearing, "'[a]doption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.'"  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)  The exceptions to this norm "'must be considered in view of the legislative preference for adoption when reunification efforts have failed.'"  (*Ibid*.)  "The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption."  (*Ibid*.)

The parental bond exception to the general rule of adoption requires proof of two elements:  regular visitation and contact between the parent and child, and a benefit to the child from continuing the relationship.  (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.)  It applies only "when there is a compelling reason that the termination of parental rights would be detrimental to the child."  (*Ibid*.)

"Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption."  (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.)  In considering the second prong, "the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer."  (*Id*. at 555.)  "A parent must show more than frequent and loving contact or pleasant visits."  (*Ibid*.)  "The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent."  (*Ibid*.)  "Further, . . . the parent must show the child would suffer detriment if his or her relationship with the parent were terminated."  (*Ibid*.)

6

On appeal, we review a court's "determination of whether there is a compelling reason for finding that termination would be detrimental to the child" for abuse of discretion, and the underlying factual issue of the existence of a beneficial parental relationship for substantial evidence. (*In re Anthony B., supra*, 239 Cal.App.4th at p. 395.)

Substantial evidence supports the court's determination that mother failed to prove the existence of a beneficial parental relationship. Mother's sporadic record of visitation supports the court's determination. During the period prior to the dispositional hearing, while M.G. was living with the maternal uncle, mother's visitation was irregular and mother regularly made excuses to end visits early. While a period of regular visitation followed during the time mother was in treatment and M.G. was in foster care, this period of regular visitation was only temporary. After mother left her treatment facility, her telephone calls with M.G. were reduced in both duration and frequency. The court could, and evidently did, refuse to credit mother's denials of the sporadic nature of her contacts with M.G. for lack of credibility.

Mother's continuing drug problems also demonstrate the court did not abuse its discretion in determining there was not a compelling reason to depart from the statutory preference for adoption. Even at the permanency planning hearing, mother continued to deny responsibility for the methamphetamine pipes found in her apartment. Mother also failed to demonstrate her current sobriety from methamphetamine. Mother argues on appeal that the Agency failed to provide evidence of mother's current methamphetamine use, but this misses the point. The burden fell upon mother to prove exceptional circumstances creating a compelling reason for departure from the statutory preference for adoption, and the lack of evidence of her current sobriety supported the court's conclusion, particularly in light of mother's repeated positive test results before and after treatment and her 20-year history of methamphetamine use.

## DISPOSITION

The order is affirmed.


                                        THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.