Filed 7/15/21  In re O.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re O.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076441 |
| Plaintiff and Respondent, | (Super. Ct. No. J281467) |
| v. | OPINION |
| E.R. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Julie E. Braden under appointment by the Court of Appeal, for Defendant and Appellant, E.R.

Jamie A. Moran under appointment by the Court of Appeal, for Defendant and Appellant, B.M.

1

Michelle D. Blakemore, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

B.M. (Mother) and E.R. (Father) appeal from the juvenile court's order terminating their parental rights to their minor children, O.R. and J.R., and freeing them for adoption. Mother argues the court erred in failing to apply the beneficial parental relationship exception to adoption. Father joins Mother's argument. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2019, the San Bernardino County Department of Children and Family Services (the Department) received a referral alleging severe neglect of O.R. (born in 2019) and J.R. (born in 2018). The referral alleged that J.R. was observed being held by a woman unsecured in the back seat of a moving car.

When a social worker spoke with Father about the referral, he stated that he was living with his parents with Mother and the children. He also reported that he and Mother got into a physical altercation about a year earlier, but there had been no domestic violence since then.

When the social worker spoke with Mother about a month later, Mother reported that she was living in a sober living facility to get "straight" for O.R. and J.R. Mother reported that the children were staying with their paternal grandparents.

Mother explained that she had been prescribed medication for borderline personality disorder and major depression. Mother also reported that Father had "an

2

anger issue," he had been arrested for domestic violence against her a few days prior, and that she wanted to get a restraining order against him. Mother stated that Father went into the paternal grandparents' home and began hitting and biting Mother in the children's presence. The paternal grandfather told the social worker that he captured the incident on video and gave the video to the police. Mother told the social worker that Father had repeatedly violated restraining orders she had obtained. However, the social worker could find no records confirming that Mother had ever filed for a restraining order against Father.

In June 2019, Mother authorized the Department to detain O.R. and J.R. The children were placed with their paternal grandparents. The Department filed petitions on behalf of the children under Welfare and Institutions Code section 300, subdivisions (b) and (j),[1] based on Mother and Father's domestic violence, Mother's mental health issues, and Father's incarceration. The juvenile court ordered the children detained with their paternal grandparents.

In August 2019, the Department filed an amended section 300 petition, which alleged that Father had untreated mental health issues that placed the children at risk. The Department further alleged that Mother and Father had substance abuse histories.

In September 2019, the Department filed additional information with the juvenile court. The Department reported that Mother had failed a drug test in August 2019 but tested negative two weeks later. Mother also had met with a domestic violence

---

[1] All further statutory references are to the Welfare and Institutions Code.

counselor, who reported that Mother brought the children to the meeting, appeared overwhelmed by the children, and needed help with them. Mother told the counselor that she could not perform her services because she needed childcare.

After a contested jurisdiction/disposition hearing in October 2019, the juvenile court sustained the allegations in the amended section 300 petition. The court then ordered, among other things, reunification services for the parents.

In January 2020, Mother filed a section 388 petition requesting increased unsupervised visits. Shortly afterward, the Department received a referral that Father had entered Mother's sober living home without authorization and assaulted her. Mother did not report the incident to the Department or the police. At the Department's request, the juvenile court ordered Mother's visits with the children be supervised.

In February 2020, the Department recommended that Mother's section 388 petition be denied and Mother and Father no longer be allowed to have unsupervised visits with the children because of ongoing domestic violence between Mother and Father. The Department reported Father's assaults on mother at the sober living facility. Although Mother told the Department that she was no longer seeing Father, she had continued her relationship with him, which was frequently violent.

Mother withdrew her section 388 petition and the juvenile court ordered further domestic violence services for Mother. About a week later, Father asked the social worker to waive his parental rights because he "wasn't right in the head" and "'doctors had told him he had done too much damage to his brain with drugs.'"

4

In its report for the six-month review hearing in April 2020, the Department recommended the termination of family reunification services and scheduling of a section 366.26 hearing to establish a permanent placement plan of adoption for O.R. and J.R. The Department explained that Mother and Father were not benefitting from services and had not made progress with their domestic violence, substance abuse, or mental health issues. The Department also reported it was "difficult to assess" Mother's progress "due to her dishonesty and mental health issues that prevent her from benefitting from services fully." Mother remained "adamant that her mental health diagnosis is not an issue." In the Department's view, Mother "is incapable of protecting herself, and [Father] is still a danger to [Mother] and the children."

The Department reported that the children continued to live with their paternal grandparents and were doing well. The paternal grandparents were willing to adopt the children if reunification was not possible.

At the parents' request, the juvenile court set the matter for a contested section 366.26 hearing. In its report for the hearing, the Department recommended adoption of O.R. and J.R. by their paternal grandparents. The Department reported that the children were bonded to their grandparents, who wished to adopt them.

After hearing testimony from Mother and Father, and counsel's arguments at the section 366.26 hearing, the juvenile court found that O.R. and J.R. were adoptable. The juvenile court also found that Mother and Father failed to prove the beneficial parental relationship exception applied. The juvenile court reasoned that although the parents had

5

consistent contact with the children and "nice visits" with them, Mother and Father did not occupy a parental role in their lives. The juvenile court therefore terminated Mother and Father's parental rights to O.R. and J.R. and freed them for adoption by their parental grandparents.

## III.

## DISCUSSION

Mother's sole argument on appeal is that the juvenile court erroneously found that the beneficial parental relationship exception did not apply. Father joins Mother's argument and raises no other issues on appeal beyond arguing that if the order terminating Mother's parental rights is reversed, then the order terminating his parental rights must also be reversed. We find no error.

The beneficial parental relationship exception applies when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§366.26, subd. (c)(1)(B)(i)). "This exception can only be found when the parents have maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship." (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395 (*Anthony B.*).) These are sometimes referred to as the first two prongs of the exception's test. Even after a parent proves the existence of a beneficial parental relationship, however, the juvenile court must also find that such relationship constitutes "a compelling reason for determining that termination would be detrimental to

the child." (§ 366.26, subd. (c)(1)(B).)  That is sometimes referred to as the third prong of the test.

To establish that the beneficial parental exception applies, the parent must show three things:  "The parent must show regular visitation and contact with the child, taking into account the extent of visitation permitted.  Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent — the kind of attachment implying that the child would benefit from continuing the relationship.  And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home.  When the parent has met that burden, the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption."  (*In re Caden C.* (2021) 11 Cal.5th 614, 636-637 (*Caden C.*).)

Our review of the juvenile court's ruling on whether the beneficial parental exception applies incorporates both the substantial evidence and abuse of discretion standards.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-641.)  We apply the substantial evidence standard of review to the first two prongs of the exception and the abuse of discretion standard to the third prong.  (*Ibid.*)

The first prong of beneficial parental relationship exception analysis "is quantitative and relatively straightforward, asking whether visitation occurred regularly and often."  (*In re Grace P.* (2017) 8 Cal.App.5th 605, 612.)  The juvenile court found

7

that Mother and Father maintained regular visitation and contact with O.R. and J.R. Mother and Father thus satisfied the first prong of the beneficial parental relationship exception. (*Ibid.*)

Mother argues that she occupied a parental role in the children's lives, but neither she nor Father offers any argument about the third prong of the beneficial parental relationship exception. Mother and Father make no attempt to explain why their relationships with O.R. and J.R. are "so significant and compelling . . . that the benefit of preserving [them] outweighed the stability and benefits of adoption." (*Anthony B.*, *supra*, 239 Cal.App.4th at p. 396.)

O.R. and J.R. were removed primarily because of Mother and Father's domestic violence issues, which continued throughout the dependency proceedings. O.R. and J.R. are safe and well cared for in their prospective adoptive home. O.R. and J.R. have lived with their prospective adoptive parents—their grandparents—for almost their entire young lives. They are bonded with their grandparents, who are committed to adopting them and providing them with a permanent, safe, and stable home.

On the other hand, there is ample reason to conclude that Mother and Father cannot properly care for and protect the children because of their ongoing domestic violence. At oral argument, counsel for Mother suggested that her continued struggles are not relevant to deciding whether the beneficial parental exception applies under *Caden C.* But our Supreme Court held in *Caden C.* that "issues such as those that led to dependency often prove relevant to the application of the exception" because they can

8

"speak to the benefit (or lack thereof) of continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 637.) Mother does not dispute that her domestic violence with Father, which sometimes occurred in front of the children, was harmful to them. It is therefore "relevant to the detriment from terminating [her] parental rights." (*Ibid*.)

Given Mother and Father's continued domestic violence, the children's bond with their grandparents, and the safe home their grandparents have provided them for almost their entire lives, the juvenile court reasonably found that the benefit the children would derive from a parental relationship with Mother and Father does not "outweigh the benefit [they] would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Mother and Father failed to show anything more than that they had frequent contact with the children that raised no concerns. But a loving and friendly relationship is "'not enough to outweigh the sense of security and belonging an adoptive home would provide.'" (*In re Jason J.* (2009) 175 Cal.App.4th 922, 938.) The juvenile court thus did not abuse its discretion in finding that there was no "compelling reason for finding that termination [of parental rights] would be detrimental to the child[ren]. [Citations.]" (*In re Anthony B.*, *supra*, 239 Cal.App.4th at p. 395.) We therefore conclude the juvenile court did not err in terminating Mother and Father's parental rights to O.R. and J.R. and freeing them for adoption.

IV.

DISPOSITION

The order terminating Mother and Father's parental rights to O.R. and J.R. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

FIELDS_____
        Acting P. J.

MENETREZ_____
          J.