Filed 3/1/21  In re J.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re J.A. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  J.M.,  Defendant and Appellant. | E075873  (Super. Ct. Nos. J276757, J276758, J276759 & J281748)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

J. M. (Mother) appeals from the juvenile court's orders terminating her parental rights to her four minor children, J.A., Ju.A., A.M., and A.A., and freeing them for adoption. Their fathers are not parties to this appeal. We find no error and affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, the San Bernardino County Department of Children and Family Services (the Department) received a referral alleging that Mother and Ad.A. (Father) had engaged in domestic violence. Father had been arrested several times for domestic violence, and he and Mother were trying to hide J.A. and A.A. from the Department.

A social worker spoke to Mother at the hospital. J.A., a newborn, and A.A., an infant, were with Mother. Mother denied that she and Father had engaged in domestic violence and denied being in a relationship with him even though they lived together. The social worker spoke with hospital staff, who stated that Mother did not obtain prenatal care for J.A. and that she needed Father's permission to stay at the hospital after J.A.'s birth.

When the social worker returned to Mother's hospital room, J.A. and A.A. were not there. Mother told the social worker, "He left with the kids." Hospital security stopped Father from leaving the hospital with the children.

Father told the social worker that he was aware that Los Angeles County social services were trying to locate him regarding an investigation into him, Mother, and the children. Father acknowledged he had been arrested for domestic violence in October 2017, but claimed that he had "dropped a computer" and that Mother tried to pepper spray him. Father reported that the children were present during the altercation. The police report of the incident, however, stated that Father threw Mother's laptop on the ground, then grabbed her by the hair and hit her head with a car door. Mother tried to pepper spray Father, but he took the pepper spray away from her and hit her in the head.

The Department filed petitions under Welfare and Institutions Code section 300, subdivision (b)[1] on behalf of J.A. and A.A., alleging that Mother and Father had an unstable and unsafe lifestyle and had engaged in domestic violence in the children's presence, and that Father had a substance abuse issue that Mother did not protect the children from. The Department also filed a section 300, subdivision (b) petition on A.M.'s behalf, alleging that Mother[2] had an unstable lifestyle, engaged in domestic violence with Father, and failed to protect A.A. from Father's substance abuse.

The juvenile court held a detention hearing in July 2018. The court ordered J.A., A.A., and A.M. detained from parental custody and ordered weekly two-hour supervised visits.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] A.M.'s father's whereabouts are unknown.

A few weeks later, the juvenile court held a combined jurisdiction and disposition hearing. The Department recommended offering reunification services for Mother while bypassing reunification services for Father. At Father's request, the juvenile court set a contested disposition hearing for September 2018. Before the hearing, the Department changed its recommendation, and recommended that Mother and Father receive reunification services. The juvenile court followed the recommendation, found the petitions' allegations true, and removed J.A., A.A., and A.M. from parental custody. The court also ordered weekly, two-hour supervised visits for Mother and Father.

In March 2019, the juvenile court held a six-month status review hearing. The Department recommended that Mother and Father continue to receive reunification services. The Department reported that Mother and Father had consistently visited the children, their visits were appropriate, and they took direction on how to improve their parenting skills and their family relationships. The juvenile court ordered that Mother's visits be unsupervised, continued reunification services, and set a 12-month status review hearing for August 2019.

In July 2019, however, the Department received a referral stating that Mother gave birth to Ju.A. Mother and Father did not tell the Department that they were expecting. They claimed they did not do so because they feared further involvement with the Department. The Department filed a section 300, subdivision (b) petition on Ju.A.'s behalf, again alleging Mother and Father's domestic violence and Father's substance abuse issues put Ju.A. at risk. The juvenile court ordered Ju.A. detained and set a

4

combined jurisdiction and disposition hearing for the same day as the 12-month status review for the other children in August 2019.

At the August 2019 hearing, the juvenile court found the allegations concerning Ju.A. true, ordered Ju.A. removed from parental custody, and ordered reunification services for Mother and Father. The court also ordered that reunification services continue for the other children and ordered unsupervised visitations for two weekends per month. The court set an 18-month status review hearing for J.A., A.A., and A.M. for December 2019 and a six-month status review hearing for Ju.A. in February 2020, with a special hearing for Ju.A. to coincide with the other children's December 2019 hearing.

In November 2019, the Department reported that Mother had been arrested because of a domestic violence incident between her and Father. The Department therefore requested that the parents' visits be supervised and once per week for two hours.

At the 18-month status review hearing for J.A., A.A., and A.M. in December 2019, the Department recommended terminating reunification services and setting a section 366.26 hearing to establish a permanent plan of adoption because of the November 2019 domestic violence incident. The Department noted that the parents provided differing stories as to who the aggressor was. Mother and Father requested a contested hearing as to the termination of reunification services. The juvenile court set the matter for February 2020, the same date as Ju.A.'s six-month review hearing. Before

the hearing, the Department requested the court also terminate reunification services as to Ju.A.

At the hearing, the juvenile court found that parental custody was detrimental to the children and ordered reunification services be terminated for Mother and Father. The court also ordered that the parents' visits continue to be supervised for two hours once per week, with the parents visiting separately. The court then set the matter for a section 366.26 hearing in June 2020.

At the Department's request, the hearing was continued to October 2020, so that the Department could complete an adoption assessment for the children. The Department reported that the children had been placed in adoptive homes with relatives. A.M. had been placed with her aunt since April 2019. J.A. and A.A. had been placed with their grandmother since April 2019, and Ju.A. had been placed in the same home with his siblings since February 2020.

The Department also reported that Mother's visits had become inconsistent, she had failed to visit any of the children for six weeks, and her ability to engage with them was "weak."

Before the October 2020 section 366.26 hearing, the Department submitted a report recommending that the court terminate parental rights and order adoption as the permanent plan. The Department reported that the children were happy in their respective adoptive homes and were bonded with their caretakers, who wanted to adopt the children. The Department also reported that Mother had failed to visit J.A., A.A., and

6

Ju.A. since June 2020, and their caretaker thought that contact with Mother negatively impacted the children's behavior.

At the section 366.26 hearing, Mother and Father requested that their parental rights not to be terminated and that the court apply the beneficial parental relationship exception. The juvenile court declined to do so. The court found that the children were adoptable and, although Mother and Father visited them consistently, Mother and Father did not occupy a parental role in their lives. The court further found that, even if terminating parental rights was detrimental to the children, the benefits of adoption "far outweighs" the detriment. The juvenile court therefore terminated Mother and Father's parental rights to their respective children and freed them for adoption. Mother timely appealed.

## III.

## DISCUSSION

Mother argues the juvenile court erroneously found that the beneficial parental relationship exception did not apply. We disagree.

The Legislature prefers adoption where possible. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.) Once the juvenile court finds a child is adoptable, the parent bears the burden of proving one of the exceptions to terminating parental rights exists. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343.) "[I]t is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

The parental benefit or beneficial relationship exception applies where "'[t]he parents . . . have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship.'" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The parent has the burden of proving that the exception applies. (*Ibid.*) "When applying the beneficial parent-child relationship exception, the court balances the strength and quality of the parent-child relationship in a tenuous placement against the security and sense of belonging that a stable family would confer on the child. If severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1234-1235.)

The beneficial parental relationship exception rarely applies. (*In re E.T.* (2018) 31 Cal.App.5th 68, 70.) For the exception to apply, "'the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt.'" (*In re Jason J.* (2009) 175 Cal.App.4th 922, 938.) The parent must show more than frequent and loving contact or pleasant visits. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) "'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent

8

when the natural parent has maintained a relationship that may be *beneficial to some degree*, but that does not meet the child's need for a parent.'" (*In re Jason J.*, *supra*, at p. 937.)

In deciding whether the parental benefit exception applies, "'the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.'" (*In re J.C.* (2014) 226 Cal.App.4th 503, 528-529.) To make this assessment, we consider "many variables," including "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575-576.)

"We apply the substantial evidence standard of review to the factual issue of the existence of a beneficial parental relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination [of parental rights] would be detrimental to the child. [Citations.]" (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395; *In re Noah G.* (2016) 247 Cal.App.4th 1292, 1300-1301.)

Whether there is a beneficial parent-child relationship is a factual issue. Thus, the substantial evidence standard applies to this component of the court's decision. (*In re*

9

*Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)  But whether there is a compelling reason to determine the child would suffer detriment if parental rights are terminated is a "'quintessentially' discretionary decision," because it requires the court to "determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption." (*Id*. at p. 1315.)

Mother contends she had a parental relationship with her children.  But even if she did, Mother has failed to show that "terminating their familial relationship would cause [the children] great harm." (*In re E.T.*, *supra*, 31 Cal.App.5th at p. 77.)  There is no evidence that Mother occupied a "meaningful and significant parental role." (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1109.)  The juvenile court thus did not abuse its discretion in finding that the benefits of adoption outweighed the benefits of continuing Mother's relationship with the children.

All four children were removed because of Mother's domestic violence issues with Father.  Although Mother made progress and completed portions of her case plan, which suggested that she had resolved the issues that led to the children's removal, she was arrested in November 2019 because of domestic violence with Father, suggesting she had not resolved the issues that led to the children's removal.  In other words, Mother continued the violent behavior that caused the children's removal.

By contrast, Mother's children appeared to be safe and well cared for in their prospective adoptive homes.  Their prospective adoptive parents are committed to

10

adopting them and providing them with a permanent, safe, and stable home. All four children are bonded with their prospective adoptive parents. J.A., A.A., and Ju.A. live together with their grandmother, who wants to adopt them. Even assuming the children had "positive emotional attachments" with Mother, as she contends, the juvenile court reasonably found that the benefit the children would derive from a parental relationship with Mother does not "outweigh the well-being [they] would gain in a permanent home with new, adoptive parents." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Mother failed to show anything more than that she and the children had frequent contact that raised no concerns. But a loving and friendly relationship is "'not enough to outweigh the sense of security and belonging an adoptive home would provide.'" (*In re Jason J.*, *supra*, 175 Cal.App.4th at p. 938.)

Moreover, "[t]he juvenile court may reject the parent's claim simply by finding that the relationship maintained during visitation does not benefit the child significantly enough to outweigh the strong preference for adoption." (*In re Jasmine D.*, *supra*, at p. 1350.) The juvenile court properly did so here. Nothing in the record suggests that the children would suffer "great harm" if their relationship with Mother is severed. (*In re E.T.*, *supra*, 31 Cal.App.5th at p. 77.) Mother failed to present any evidence that her relationship with her children was so beneficial that it was an abuse of discretion for the trial court to determine that the detriment to the children of terminating that relationship did not outweigh the benefit to them of permanency through adoption. The juvenile court therefore did not abuse its discretion by terminating Mother's parental rights to the

children and freeing them for adoption.  (See *In re Jasmine D.*, *supra*, at pp. 1351-1352 [beneficial parent exception did not apply despite mother's "successful visitation record" because mother "made no steps toward overcoming the problems leading to [her child's] dependency"].)

IV.

DISPOSITION

The juvenile court's orders terminating parental rights and freeing the children for adoption are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.